1  Brent F. Romney, CA SBN 72424
2  BLUMENTHAL LAW OFFICES
   3993 Market Street
3  Riverside, CA 92501
4  Telephone: (951) 682-5110
   Facsimile: (951) 688-7303
5  E-mail: bromney@blumenthallawoffices.com
6
7  Attorneys for Defendant Apolonio Gamez.

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10
   UNITED STATES OF AMERICA,          )  **ED CR No. 18-00100-JGB**
11                                     )
                Plaintiff,             )
12                                     )  **DEFENDANT'S RESPONSE TO**
                                       )  **PRESENTENCE REPORT AND**
13      vs.                            )  **SENTENCING POSITION FOR DER**
                                       )  **DEFENDANT APOLONIO GAMEZ**
14                                     )
15 APOLONIO GAMEZ,                     )
                                       )  DATE:       January 28, 2019
16              Defendant.             )  TIME:       2:00 p.m.
                                       )  COURT:      Hon. Jesus G. Bernal
17                                     )

18
19      Defendant APOLONIO GAMEZ, by and through his attorney, Brent F. Romney, hereby files
   his response to the Presentence Report ("PSR") and his position regarding sentencing.
20
        This response and sentencing position is based upon the attached memorandum of points
21 and authorities, the files and records in this case, and such further evidence and argument as the
22 Court may permit.
23      Date: January 10, 2019                    Respectfully submitted,
24
25                                                BLUMENTHAL LAW OFFICES
26
27                                                Brent F. Romney
                                                  Attorneys for Apolonio Gamez
28

                                    1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION:

Defendant Gamez very respectfully wants it to be clearly stated at the outset of this Response that he continues to accept full responsibility for his unlawful conduct, and that nothing stated in this Response is meant to minimize the seriousness of his acts or in any way justify his conduct. The purpose of this Response is to address the *huge upward variance* recommendations being urged upon this Court by the United States Probation Office (hereafter, "USPO".) and the United States Attorney's Office (hereafter, "USAO".).

## II.    PROCEDURAL SUMMARY:

On April 4, 2018, the USAO filed an Indictment against defendant APOLONIO GAMEZ (hereafter, "defendant") that accused him, in part, of engaging in, or attempting to engage in, sexual acts with three (3) federal prison inmates in violation of 18 U.S.C. 2243(b).

On or about October 11, 2018, a Plea Agreement was signed by defendant and the USAO and subsequently filed with the Court, in which defendant and the USAO reached an agreement in which defendant agreed to plead guilty to the following Counts of the Indictment:

| | | |
|---|---|---|
| Count One | Violation of 18 U.S.C. 2243(b) | |
| Count Four | Violation of 18 U.S.C. 2243(b) | |
| Count Fife | Attempted violation of 18 U.S.C. 2243(b) [Plea Agreement, p. 2] | |

As part of the Plea Agreement, defendant and the USAO agreed that the applicable Sentencing Guidelines factors are, as follows:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. 2A3.3 [Plea Agreement, para. 14] |
| Combined Offense Level: | +3 | U.S.S.G. 3D1.4 [Plea Agreement, para. 14] |
| Acceptance of Responsibility: | -3 | U.S.S.G. 3E1.1 [Plea Agreement, para. 3.d] |
| TOTAL OFFENSE LEVEL: | 14 | |

Although no agreement was reached regarding defendant's criminal history, the Pre-Sentence Report (hereafter, "PSR") concludes defendant is to be considered in Category One. [PSR, p. 4.] The Sentencing Table for an Offense Level of 14 involving a Category One defendant is **15 to 21 months**.

2

Further, defendant will be required to register as a sex offender for the remainder of his life. [Plea Agreement, para. 2.m.i]

Defendant acknowledges that neither probation nor the Court is bound by the terms of the Plea Agreement when defendant is sentenced. [Plea Agreement, para. 13, 27-29] Further, defendant acknowledges that both he and the USAO reserved the right to "to argue for a sentence outside the sentencing range established by the Sentencing Guidelines . . . ." [Plea Agreement, para. 16], and that the USAO may "seek a sentence of imprisonment of no more than 87 months." [Plea Agreement, para. 3.e]

### III.    FACTUAL SUMMARY:

Defendant respectfully refers the Court to the "Factual Basis" contained in the Plea Agreement [Plea Agreement, para. 12] at pages 8-11.]

### IV.    THE USPO'S INCREASED CUSTODY RECOMMENDATIONS IN THE PSR:

The Increased "Combined Offense Level" Calculation:

In the Plea Agreement the USAO and defendant agreed that the "combined offense level" was +3, and that, added to the Base Offense Level of 14 and "acceptance of responsibility" of -3, the Total Offense Level would be 14. [Plea Agreement, para. 14]

The United States Probation Officer (hereafter, USPO) concluded in the Pre-sentence Report (hereafter, PSR), however, that the "combined offense level" should be +4 because the probation officer opined the "pseudo offense" involving victim #1 should be included [PSR, pp. 10-13.].

In its Response to the PSR, the USAO writes that it "respectfully disagrees with the calculation by the USPO . . . ." The USAO requests the Court limit the Combined Offense Level to +3 "to honor the parties' agreement." [USAO Response to PSR, page 3.]

Defendant also respectfully urges the Court to "honor the parties' agreement" and limit the combined offense level to +3.

Recommendation of Upward Variance of almost 300% to 400% for Term of Custody:

With a Total Offense Level of 15, as calculated in the PSR, the "sentencing guideline" custody amount is 18-24 months. [PSR, para. 130.] Yet, the USPO recommends an *additional* upward variance to *60 months custody*. The USPO's recommendation of 60 months federal

3

prison in the PSR is 300% to 400% *greater* than the Sentencing Guideline level of 15 to 21 months which the parties agreed were applicable!

In support of this *huge* upward variance, the USPO argues that the "seriousness of the offense" in this case, in comparison with other similarly situated individuals who have committed the same or similar crimes, justifies it. [USPO Sentencing Memorandum, p. 5.]

- The USPO states "Gamez is a "repeat offender." [USPO Sentencing Memorandum, p. 5.] The USPO states defendant "repeatedly victimized Victim #1." The factual statement discloses he engaged in unlawful sex acts with Victim #1 on *two* occasions. Using the phrase "repeatedly" makes it sound worse than that which occurred. And when one thinks of an accused as being a "repeat offender", the inference is that he committed a crime, was caught and punished, then committed the crime again; i.e. a repeat offender. In other words, the repeat offender doesn't learn his lesson the first time; therefore, he needs a greater penalty the second time. Further, the USPO states in support of its large "upward variance" recommendation that there were "three (3) victims". That is correct. But the Sentencing Guidelines have already accounted for this. An additional Combined Offense Level of +3 was added to the Base Offense Level of 14 in the Plea Agreement.[1]

- The USPO writes that defendant either found or placed the victims in an isolated location in order to commit the unlawful sex acts. [USPO Sentencing Memorandum, p. 5.] But, that, too, is considered a part of the offense. A prison guard is *not* going to engage in a sex act with an inmate in a public setting. To commit this crime, the offender will *always* either find or place the victim in an isolated (i.e., private or secret) location in order to commit the sex crime.

- The USPO also writes that defendant's comment to Victim #2 that she could be sent to the "hole" amounted to "an egregious abuse of Gamez's position" because the victim feared what Gamez would do to her if she did not agree to engage in a sex act with him. But the commission of this crime by a prison guard will always be "an egregious abuse of the guard's position." This, too, is part of the crime for which the Sentencing Guidelines have included.

In further support of this *huge* upward variance recommendation, the USPO argues that the deterrence factor is important in protecting the public, both as to defendant and to others similarly situated, and the trauma the victims endured and the future mental health counseling and treatment justify a substantial upward variance.    The USPO states "Gamez exhibited complete disregard for the victims that he exploited." [USPO Sentencing Memorandum, p. 6.]

- In every crime of this nature in which a prison guard engages in non-consensual sex with an inmate, the offender "exhibits complete disregard for the victim[s] that he exploit[s]."  This is a factor that the Sentencing Guidelines would have incorporated since it occurs in every case like this.

- Further, there is nothing in this case that suggests the need for deterrence for defendant or for others is greater than in other similar cases.  Again, the need for deterrence is present in every crime of this nature, and since there is no additional issue regarding additional deterrence, the Sentencing Guidelines would have incorporated the need for deterrence.

The USPO also argues in support of its large upward variance recommendation that the upward variance recommendation is merely "an incremental increase" that "is needed to promote Gamez's respect for the law." [USPO Sentencing Memorandum, p. 6.]

- Respectfully, an upward variance recommendation from the Plea Agreement's 15 to 21 months to a full 60 months (i.e., an almost 300% to 400% increase in custody time) is hardly "an incremental increase" in custody time.  The USPO provides no significant reason why defendant needs this additional custody time for him to develop a respect for the law.  Indeed, as will be discussed, below, defendant's respect for the law has been exhibited by him throughout practically all of his life.  A sentence within the Sentencing Guidelines of the Plea Agreement will suffice to instill in defendant a respect for the law.

---

[1] A +4 increase in the Combined Offense Level" is recommended by the USPO, thereby accounting for the multiple victims as well as twice engaging in sex with Victim #1.

## V.    THE USAO'S "UPWARD VARIANCE" RECOMENDATINO IN CUSTODY TIME:

As part of the Plea Agreement, defendant and the USAO agreed that the applicable Sentencing Guidelines factors are, as follows:

|  |  |  |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. 2A3.3 [Plea Agreement, para. 14] |
| Combined Offense Level: | +3 | U.S.S.G. 3D1.4 [Plea Agreement, para. 14] |
| Acceptance of Responsibility: | -3 | U.S.S.G. 3E1.1 [Plea Agreement, para. 3.d] |
| TOTAL OFFENSE LEVEL: | 14 | |

Defendant acknowledges, however, that both he and the USAO reserved the right to "to argue for a sentence outside the sentencing range established by the Sentencing Guidelines . . . ." [Plea Agreement, para. 16], and that the USAO may "seek a sentence of imprisonment of no more than 87 months." [Plea Agreement, para. 3.e]

In its Response to the PSR, the USAO does, indeed, urge an upward variance to 87 months federal prison custody. [USAO's Response to PSR, p. 3.] It would appear from the above that the USAO, even when signing the Plea Agreement, intended to urge the Court to impose an 87 month prison sentence for defendant, even though the USAO agrees that the applicable Sentencing Guidelines recommend a prison sentence of 15 to 21 months. Why the USAO did not include in the Plea Agreement the fact that they intended at the time of sentencing to recommend a 414% to 580% upward variance from the Sentencing Guidelines recommendation in the Plea Agreement is not known.[2]

This rather dramatic upward variance recommendation, however, must be based on specific factors *in this case that are not present* in other similar cases involving similarly situated defendants, and the factors in this case must be *significantly more egregious* than are found in other similar cases. Otherwise, it seems apparent that the USAO believes that the Sentencing Guidelines recommendation for crimes like these is inadequate. These specific, more egregious factors must apply to the sentencing rules contained in 18 U.S.C. 3553, and the USAO does this beginning at page 6 of their Response to the PSR.

**The Section 3553 factors:**

The USAO writes, "Defendant abused two separate victims, one of them twice, and he attempted to sexually abuse a third victim." His conduct was "deliberate", and spanned several

months time. He was a prison guard entrusted to supervise inmates, and was in a position of authority over his victims. [USAO's Response to PSR, p. 6.]

He was not only a repeat offender, but he followed a similar *modus operandi*. Although no victim said he used brute force, "he capitalized on the power disparity between himself, a correctional officer in a position of authority, and his victim . . . ." The victims were alone and isolated when the sex acts occurred, and the acts were "one sided encounters."[USAO's Response to PSR, p. 7.]

- As explained above, the multiple victims argument is already included in the Combined Offense Level calculations. And a "repeat offender" is normally considered to be someone who has committed a crime, has been arrested and convicted, and then he commits the crime again. He is a "repeat offender" who did not learn his lesson the first time. Therefore, he is more dangerous, and deterring him from reoffending may require increased custody time. That is not the case here.

- Sex offenses, by definition, are "deliberate" and preplanned. They don't just happen. That is not a unique factor in this case that justified an upward variance from the Sentencing Guidelines.

- The existence of a "*modus operandi*" will often exist in these types of cases in which more than one inmate is victimized. There is nothing unique about defendant being deliberate in this case or that he used a similar *modus operandi*. Every offender in every similar case is deliberate, the sex acts are planned, and existence of a *modus operandi* is not unusual in multiple victim cases where the offender is a prison guard and the victim is an inmate. The offender must either find or move the victim to an isolated and private location for the sex act to occur. Referring to those facts as a *modus operandi* is not unique. These crimes are not committed in public. These factors exist in practically all similarly situated cases, and in this case they are not unique nor overly egregious.

- A violation of 18 U.S.C. 2243(b) requires that the offender be in a position of authority at the prison (i.e., a prison guard), and the victim is a "ward" or inmate, who by definition is at a power discrepancy disadvantage. Sex crimes are always

---

[2] An 87 month prison sentence is 580% greater than a 15 month prison sentence. An 87 month prison sentence is

done is secret; hence, the victims are alone and isolated whtn the sex acts occur. Further, they are almost always "one sided encounters." These factors exist in practically all similarly situated cases and are unique and overly egregious in this case.

For justifying an upward variance in the Sentencing Guidelines, there must be egregious, unique factors that make the commission of the present offense more serious than other similar cases. That is not the situation here.

The facts of this case are not unusual for these types of cases. The Sentencing Guidelines Base Offense Level provides the "baseline" for sentencing in these types of cases. The Combined Offense Level calculation is the Sentencing Guidelines way of providing a proportionate sentence when multiple similarly situated victims are involved.

Once again, defendant reiterates he does not seek to mitigate what he has done, nor in any way blame anyone else or justify his actions. This Response is designed solely to address what the defense believes is an inappropriately based recommendation for an upward variance in sentencing in this case.

## VI.    FACTORS IN MITIGATION OF AN EXTENDED FEDERAL PRISON SENTENCE:

From the moment defendant was confronted with, and arrested for, the offenses for which he has pled guilty, he has not only accepted responsibility for his conduct, but has tried to minimize the impact his conduct will have on others in the future.

- He has not contested any facts in this case, and knows that by pleading guilty, the named victims in this case will be spared having to testify and, in effect, having to relive the events of this case. In this way, he hopes to ease the pain and suffering he has caused to the victims he has hurt and offended.

- He has expressed sincere remorse. He also recognizes that is conduct ruined his relationship with his wife, with his employment and with friends. [PSR, para. 36.]

- His wife writes, "[Defendant] has often told me how sorry he is, and for the sorrow he has caused, not just to me, but to his parents and other family

---

414% greater than a 21 month prison sentence.

members.  He has told me that he feels he betrayed the trust of those he loves the most, and for this, he is so very sorry." [See Attached Letter from his Wife, Karina Gamez.]

- His wife also writes, "He has also said how ashamed he is, that as a correctional officer, so much more was expected of him.  He feels he has let the entire criminal justice down [sic.]  He is very humble, however, and he blames no one but himself."  [See Attached Letter from his Wife, Karina Gamez.]

- By pleading guilty at such an early stage of the proceedings, he has also spared the USAO of having to spend time and resources to prosecute this case.

Defendant has been a productive, law abiding citizen throughout his life.  He has always been hard working, and he has the necessary education, experience and vocational skills to do well when released from custody.

- Within months of graduating from high school, he enlisted in the United States Navy, served his country for over 12 years (1998-2010), and was honorably discharged.  He served twice in combat theaters (Afghanistan, 2001; Iraq, 2003) as an aircraft mechanic on a ship.  He received several honors including
    - ✓ Three (3) Navy/Marine Corps Achievement Medals,
    - ✓ Four (4) Good Conduct Awards,
    - ✓ National Defense Service Medal,
    - ✓ Armed Forces Expeditionary Medal,
    - ✓ Global Ear on Terrorism Expeditionary Medal,
    - ✓ Global Ear on Terrorism Service Medal, and
    - ✓ Humanitarian Service Medal. [PSR, para. 114.]

- Military records describe defendant as "team oriented", an "impressive leader", and a person who "exemplifies Navy Core Values and maintained high stands of conduct for all work center personnel."  Further, defendant "demonstrated a great level of dedication and professionalism, a true asset to the division and the command.  He will surely succeed in future endeavors."[PSR, para. 115.]

- He has always been either gainfully employed or going to school, is self-sufficient, and has not posed a burden on society or on others.

- He earned his Bachelor's Degree in Business Administration in 2006. [PSR, para. 109.] Additionally, in 2011-2012, he took vocational classes and earned certifications for heating, ventilation and air conditioning. [PSR, para. 110.]
- His only criminal conviction was for driving while under the influence of alcohol that occurred almost 18 years ago. [PSR, para. 78, 105] He has never re-offended.

Defendant is a good, responsible father, and has made extensive efforts to regain the trust and confidence of his wife and family, thereby making it more likely that he will have the support needed to succeed when released from custody.

- Defendant's first marriage occurred in 2001. Upon his return from an overseas Navy deployment, his wife asked for a divorce. They co-parented their son and had an amicable relationship. As a result, their 18 year old son is doing well and is attending school. [PSR, para 92-93]
- Understandably, after defendant's arrest, he and his wife had marital difficulties. Arguments occurred, but these domestic disputes never involved physical abuse or violence, and defendant was never arrested. She filed for an emergency protective order once, but never had it served. Rather, she and defendant sought counseling and therapy in an effort to reconcile their marriage. [PSR, para. 12.]
- Defendant and his wife have two children together, and she has one from a previous marriage. His wife states that defendant "has helped raise [her son] and considers him his son just like [defendant's] other biological children." [PSR, para. 95-96.]
- Defendant's wife told the USPO that defendant is "a dedicated husband and father." They had marital problems after his arrest because of the nature of the offenses. Financial problems exacerbated their marital problems because defendant lost his job as a correctional officer. She is "unconditionally supportive" of defendant and believes they can rebuild their marriage. Defendant "is committed to his children and is involved in their schooling and extracurricular activities." [PSR, para. 97.]
- Attached to this Response to the PSR is a letter written by his wife, Karina Gamez. Therein, she reiterates what she told the USPO, but adds the following:

✓ Defendant has always been actively engaged in raising his son from his first marriage.

✓ When she met defendant as a single mother with a small child, defendant motivated and encouraged her to succeed.

✓ Defendant has always attended his children's school events, sports activities, recitals, provided rides to and from events, helped with their homework, and routinely cooks meals for them. He does the yardwork and assists in doing the laundry for his four sons. "He is a wonderful father."

✓ Defendant is actively involved in, and has supported financially, the Temescal Canyon Boosters, the Lake Elsinore Blues Academy soccer club, and the Lake Elsinore Little League. He supports fundraisers for these youth organizations. Further, when his sister-in-law was diagnosed with cancer, he contributed money to the Susan G. Komen Foundation to help find a cure for breast cancer.

✓ "Very importantly", she writes, "[defendant] treats my son as if he were his own son, and as a mother, I will always be grateful for that."

✓ "Through it all, [defendant] has made a difference, not only in our children's lives, but in the lives of many other children as well."

✓ She concludes her letter, "I respectively ask that you [Judge Bernal] consider all the good that Apolonio has done in his life, as well as his potential for doing good in the future, as you determine . . . what the appropriate sentence should be in this case." [See Attached Letter from his Wife, Karina Gamez.]

In addition to the letter written to this Court and attached to this Response to the PSR, other family members have written character letters regarding defendant which are also attached to this Response to the PSR.

• Defendant's younger sister, Maria Gamez, writes that defendant taught her the importance of hard work and of "following my dreams." He set a good example for his younger brothers and sisters. She saw him make sacrifices for his family, working full time, going to school at night, but finding time for his young family. He has devoted his adult life to his family, specifically becoming a role model for

his sons, instilling in them responsibility, dependability, trustworthiness and compassion.

- Defendant's niece, Anna Gamez, writes that defendant served as a father-figure to her as she was raised by her single mother. He was always available for her, and he hosted family gatherings and outings to which she was always invited. He has assisted her through various stages of her life. He also taught her how to budget her money in order to purchase a home and other financial aspects of her life. He is an inspiration to her.

- Defendant's niece, Maryssa Gamez, writes that defendant inspired her to join the Navy, as well as earn her college degree. He has made significant time sacrifices in several efforts to help he adjust, both into the Navy and when she left the Navy. "He goes above and beyond for the people he loves. I will be forever grateful for all that he's done for me."

- Trinity Gamez is defendant's sister-in-law, and he is the godfather to her youngest child. He is very family oriented, a great father, and is always looking for ways to improve his relationship with his children. He decided to commute long distances to work so his children could attend better schools. He has done his best to teach his sons to grow up to be respectable young men.

- Defendant's nephew, Ricardo Gamez, writes that defendant is not only his uncle, but he is also his godfather. As such, defendant has always been his second father. Defendant taught him that "no goal is ever hard to accomplish; you just have to work hard to achieve it."

- Defendant's niece, Vanessa Gamez, writes that defendant "is more than an uncle, he is an inspiring leader who has se great examples for me and my siblings." He inspired her to gain her college education, and helped her decide where to go to college, what she should major in, etc. She is "forever grateful" to him because he has "motivated her to strive for her aspirations and never give up without a fight."

It is very apparent from these letters that defendant is surrounded by a large, closely knit family in which he is a very important figure. It is this strong, supportive family that will give

defendant the strength to get through these very difficult times in his life. They will motivate and encourage him to do everything necessary to make things right and never reoffend.

**CONCLUSION**:

Defendant has strived to live a good, productive life. He is very family oriented, and has made a difference in the lives of many people. He served his country for 12 award filled years, and he has consistently taken care of his immediate and extended family. While working as a prison guard, however, he made several very serious mistakes that admittedly have had a terrible impact on the three victims. He is willing to comply with any orders this Court imposes, but he respectfully requests the Court abide by the Plea Agreement's Sentencing Guideline recommendations as it imposes sentence.

Respectfully submitted,

BLUMENTHAL LAW OFFICES

Brent F. Romney

Attorneys for Apolonio Gamez

October 29, 2018

The Honorable Jesus G. Bernal
Judge of the Central District of California

Dear Judge Bernal:

I am writing this letter on behalf of my husband of 14 years, Apolonio Gamez.

My name is Karina Gamez. I am actively involved in the community of Lake Elsinore. I am involved in the Booster Sports Programs at Temescal Canyon High School. As a nurse, I am a leader of HOSA, and serve as a mentor for students interested in entering a medical career program. I served as a Historian for North Orange County Regional Occupational Program.

I first met Apolonio in June, 2004. I was a single mother with a two year old son. Apolonio was also a single parent of a two year old son whom he had cared for since his son's birth. I can never forget his willingness to offer a helping hand to me and to my young son at that time. He motivated me, and encouraged me to succeed. We subsequently married. Apolonio and I are now parents to four very active children. Very importantly, he treats my son as if he were his own son, and as a mother, I will always be grateful for that.

Apolonio is a hero to our children. He served for several years in the United States Navy and was named Sailor of the Year on more than one occasion. Upon leaving the Navy, he became employed as a Federal Correctional Officer. He received service awards from Herlong Correctional Facility and the MDC in Los Angeles. He has always provided for me and our children.

His work, however, would not end when he completed his shift at work. He actively participates in preparing warm meals for his family, does yard work, and helps with the laundry for his active family. He never says "no" when I ask for his assistance. He always attends our children's school recitals, and is actively involved in their sports activities. He also takes time to help each of our children with their homework. He is a wonderful father.

He has donated money and his time to the Temescal Canyon Boosters, the Lake Elsinore Blues Academy soccer program, and the Lake Elsinore Little League. He participates in fundraisers, and we host events for these organizations. He also volunteers for city beautification events. When his sister-in-law was diagnosed with breast cancer, he donated money to the Susan G. Komen Foundation, in hopes of finding a cure. Through these activities, Apolonio has made a difference, not only in our children's lives, but in the lives of many other children as well.

Apolonio has often told me how sorry he is, and for the sorrow he has caused, not just to me, but to his parents and other family members. He has told me that he feels he betrayed the trust of those he loves the most, and for this, he is so very sorry. He has also said how ashamed he is, that as a correctional officer, so much more was expected of him. He feels he has let the entire criminal justice down. He is very humble, however, and he blames no one but himself. The way he has treated me and our children since his arrest has convinced me that he truly is sorry. It has taken time, and it has been difficult, but I have forgiven him. I am willing to support and sustain him as he pays the price for what he did. I am confident that he will turn this terrible experience into a positive, life-changing experience, and that our family will be strengthened even more in the future.

I am absolutely convinced that Apolonio, if allowed to remain out of custody pending his sentencing, will not cause any harm to others, and he will appear at the appropriate time and place pursuant to this Court's orders.

I respectively ask that you consider all the good that Apolonio has done in his life, as well as his potential for doing good in the future, as you determine whether he should be released pending sentencing, as well as what the appropriate sentence should be in this case.

Thank you.


Karina Gamez

Maria Gamez
7419 Cherokee Dr.
Downey, CA 90241

November 12, 2018

Re: Apolonio Gamez

To: Honorable Jesus G. Bernal
Central District of California

      I am writing this letter on behalf of Apolonio Gamez. My name is Maria Gamez and I am
Apolonio's youngest sister. I am a middle school Special Education Teacher that has worked for
Paramount Unified School District for the past 13 years. As an educator, I have served in
multiple committees that support educational equity, school culture and climate, and restorative
practices that help build stronger relationships with students . I have also been recognized as
Teacher of the Year and have represented my district in Schools to Watch Conferences. I
volunteer my time after school supporting students academically and host multiple fundraisers
throughout the year that support college scholarships for Paramount students. As Apolonio and I
have grown, I reflect back on the important role he has played in my life. Apolonio taught me the
importance of working hard and following my dreams. He also guided me in life by being there
every step of the way and helping me when I needed him the most by encouraging me and
assisting me in making the best choices. He showed me the importance of family and how to be a
devoted and loving parent to my children .

      Growing up Apolonio made it a goal of his to make sure that he set a good example for
his family. Through his choices in life he made me set high standards for myself and work hard
to achieve them. Immediately after graduating from high school, he enrolled in the Navy. While
he was enlisted he committed himself to working full-time, being a father, and working on his
B.A. in Business. I remember him working long hours at work, driving home to see his son, and
staying up late at night to complete his assignments all in hopes of giving his family a better
future. His strong work ethic and ability to sacrifice himself made me want to do the same.

      Furthermore, Apolonio has devoted his adulthood to his family. In particular, he has been
a role model to his sons showing them the qualities of responsibility, dependability,
trustworthiness, and compassion on a daily basis. As a father and husband, Apolonio truly set the
bar high for all men. He worked full-time, came home and made his children dinner, took them
to their practices, and still had time and energy to help them with their academics. He spent his
time and energy making sure his children were receiving the best education and held them to
high standards at home and school. He worked hard to provide them with a quality life and made

sure that his children always knew that they could count on him for anything. I observed first hand the love and dedication that he showed his wife on a daily basis. He sacrificed sleepless nights and extra shifts at work so that she could achieve her dream of becoming a nurse. He was the sole provider for most of the relationship and never once complained. He strived to make his wife feel like she was the most important person in this world.. He planned date nights and spontaneous getaways to show his love and appreciation for his wife. His actions showed me that he is a caring and involved father who has always placed his family at the center of his life and I am grateful for having him as an example in my life.

Apolonio has had and will continue to have a positive impact on those who have had the privilege of knowing him. I know I would not be the person I am today if it was not for him.

I appreciate you taking the time to read this letter.

Maria Gamez

To: Honorable Jesus G. Bernal
Central District of California

I am writing to you on behalf of Apolonio Gamez. My name is Annamarie Gamez and I work as a Technical Recruiter for a technology industry company called Binc. I live in Las Vegas, Nevada and graduated from the University of Nevada, Las Vegas with a Bachelor's Degree in Communications. I am heavily involved with UNLV Rebel Media Group, a student run organization that provide hands-on digital, social, and marketing agency experience to undergraduates, and volunteer at the Las Vegas Rescue Mission on the weekends.

Apolonio is my uncle and I have known him my entire life. Over the years I have looked up to Apolonio as a father figure since I was raised by a single mother. He is someone who I admired, reached out to for advice, and would spend time with. He is family oriented often hosting holidays at his home, inviting his nieces & nephews on outings, I have watched his family grow from one to now four and throughout the way he has made sure to include me in all family activities.

He has helped me through various stages of my life and one of the most notable was deciding what to do after high school. Coming from a family with multiple members of the military, I felt compelled to join the military even though my passion was elsewhere. As I toiled with the decision of joining the military or going to college, Apolonio assured me that both decision were great and that I should choose whichever path gave me the sense of fulfillment he had felt with the Navy. As a teenager, Apolonio provided me with the guidance, confidence, and dependability I need to move forward.

He was also crucial in helping me during the purchase of my home. It was a big decision for me since I was young and had only lived on my own for a short period of time. He would call me to review & complete paperwork, comparing different financing options, and staying within my budget. He made sure to provide me with honest feedback and I felt supported throughout the entire process.

Finally, Apolonio has influenced my own personal growth. He is someone who I admire for his calm demeanor, thoughtfulness, and introspection. I aspire to be an inspiration to others just as he has been to me.

Regards,
Anna Gamez

To: Honorable Jesus G. Bernal

Central District of California

My name is Maryssa Gamez. I am a Navy Veteran and a college student. I live in Cheyenne, Wyoming. I am writing this letter on behalf of Apolonio Gamez. I have known Apolonio my entire life. He is not just my uncle, but my mentor and role model. He's played a huge role in making me the person I am today. He inspired me to serve my country and join the Navy and to get a college education.

Prior to my enlistment Apolonio and I were close but after I decided to enlist we became closer. He helped walk me through the enlistment process and offered advice and reassurance every step of the way. He was very hands on and helped me prepare for boot camp. He gave me advice and tips for how to handle being away from my family. While in boot camp Apolonio continued to support me. He was an excellent resource for my mother as well. He answered all of her questions and eased her worries. Even after boot camp he continued to support me offering career advice as well as helping me cope with back to back deployments. Deployments were hard for me, but I could always count on Apolonio to be on the port holding up a homemade banner to welcome me home. Apolonio has always been there for me.

When I got out of the Navy I was very lost. I didn't know how to access any of my benefits or how to seek treatment for my Post traumatic stress disorder. I knew I needed help but I didn't know how to ask. Apolonio could have called and told me what to do and that would have been more than enough but he's not that kind of person. He traveled all the way to Wyoming and spend a whole weekend, taking me to the Veteran's hospital, making appointments for me and talking to me about PTSD and the many options I had. Thanks to Apolonio I was able to get the help I needed and enroll in college.

He goes above and beyond for the people he loves. I will be forever grateful for all that he's done for me.


Sincerely,

Maryssa Gamez

To: Honorable Jesus G. Bernal
Central District of California

My name is Trinity Gamez. I own an promotional advertisement company; Crest
Industries. I live in Cheyenne Wyoming. I am writing this letter on behalf of Apolonio Gamez.

I have known Apolonio for 30 years, He is my brother in law and the Godfather to my
youngest child. Over the years I have grown very close to Apolonio I think of him as more than
just a brother but a friend as well. I have seen him grow from a caring young boy into a
compassionate and dedicated husband and father. Family has always been the most important
thing to Apolonio, he is a dedicated father, attentive husband, and an outstanding uncle to my
children.

Apolonio is very active in the lives of his children. He treats all of his children equally
both biological and step. He is a great father  and is always looking for ways to improve his
relationship with his children.
Despite his hectic work schedule he always makes the time to engage with his children whether
it be by helping them with homework or cheering them on at football, soccer, and  t ball games.
He pushes his children to do the best at everything they do whether it be school work or just
helping around the house. He has always done his best to make sure that his boys grow up to be
respectable young men.  Apolonio is not afraid to make sacrifices for his children and has often
had to commute long distances so they could attend better schools.  He has always put the needs
and wants of his family above his own.

He is a reliable provider and has been the only source of income for the majority of his
marriage.  He encouraged and supported his wife when she decided to pursue a career in the
medical field. When she attended school he picked up more responsibilities around the house to
give her the time to focus on her education. Apolonio loves his wife and is her number one fan

his love and support has helped her flourish and achieve her goal of being a nurse. He is a selfless man and has dedicated his life to being present for his family.

Apolonio has been a great role model not only for his own children but mine as well. His military service inspired my eldest to follow in his footstep and join the Navy. He was so helpful and patient with her before and after she joined helping walk her through the steps of enlistment. With the knowledge she got from him she was able to make it through boot camp with more ease.  He helped me understand her job and calmed my nerves when she went on multiple deployments. Even after her service ended  he continued to offer his support helping her make the transition back to civilian life as seamless as possible. My sons have also benefited from having him as an uncle. He is very hands on with my youngest son and has proven to be an excellent choice for Godfather.

Apolonio is a good man and has enriched my life as well as the lives of those around him. He has been and continues to be an extremely important person in my family.

Thank you for your time.


Trinity Gamez

To: Honorable Jesus G. Bernal

Central District of California

I am writing this letter on behalf of Apolonio Gamez. My name is Ricardo Gamez. I live in

Anaheim, California. I working for TTM Technologies in their purchasing department. I have

known Apolonio for 26 years. He is my uncle. Not only is he my uncle, but he is my godfather.

Apolonio or Paul as i like to call him has taken his role as godfather very seriously. Throughout

my whole life he has been there for all my accomplishments. When I think of my uncle, I always

seem him as a second father figure. Whenever I have been in need of a word of advice, I know I

can go to my uncle and he will be there for me.

Having grown up with Apolonio I have always looked up to him. He's a hard worker and has

always provided for his family. Even when working crazy hours, he has always made sure to

have time for his family. Apolonio is big on family. I've seen how he takes care of all his

children. And makes sure they have all they need. His sons are his pride and joy. If his sons have

a soccer game, football game or t-ballgame you will find him in the stands cheering them on.

I have always looked up to my uncle because he always looks at the positive things in life.

Whenever an obstacle come his way, he finds a way to move forward. I've also always admired

his ambition. He has always worked hard for what he wants. One thing I will never forget my

uncle told me is "no goal is ever hard to accomplish you just have to work hard to achieve it.

Yours truly

Ricardo Gamez

Dear Honorable Jesus G. Bernal

Central District of California

My name is Vanessa Gamez and I am a student at California state Channel Islands. I live in Anaheim, California. I am writing this on the behalf of Apolonio Gamez. I have known Apolonio Gamez my entire life. He is a trustworthy uncle who is very knowledgeable. He is more than an uncle, he is an inspiring leader who has set great examples for me and my siblings.

Apolonio has inspired me to pursue my education and has encouraged me to explore and find my passion. College can be a very terrifying idea but he made it an easy process to understand and take in. He always has rooted for me to explore and have a lifetime experience of going to college away from home. He was always so interested in my career pathway and gave the best support. He aided in determining what professions could come out of certain majors which made it such an easier task for me. My uncle Apolonio has always been one to help navigate my next step towards my goal and the steps included to reach the next milestone. No matter what I pursued and no matter how many times I found a new passion, he encouraged me to go forward with it.

My uncle Apolonio helped me overcome many obstacles. He has also helped me overcome personal challenges that have molded me into a better individual. He always had the right words to say to motivate me to get up and try again. My uncle Apolonio is a family-oriented individual who puts his family before himself. He is honestly an amazing uncle who always finds time to hang out with our family. My uncle Apolonio is a great father as he has been a wonderful father figured who has guided me through positive paths. My uncle Apolonio has always had and will always have my best interest at heart and I am grateful to have an uncle who will go out of his way to help his loved ones even though he got his own children to attend to. I will forever be

truly grateful to have Apolonio in my life because he has motivated me to strive for my

aspirations and never give up without a fight. I am truly blessed to call him my uncle.

Thank you for your time.

Vanessa Gamez